IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF OTTAWA TOWNSHIP HIGH SCHOOL DISTRICT 140, LASALLE COUNTY, ILLINOIS; BOARD OF EDUCATION OF OTTAWA ELEMENTARY SCHOOL DISTRICT 141, LASALLE COUNTY, ILLINOIS; T.H., A MINOR, BY HIS MOTHER AND FATHER AND NEXT FRIEND, S.H. AND C.H.; S.H. AND C.H. INDIVIDUALLY; H.G., A MINOR, BY HER MOTHER AND NEXT FRIEND L.G.; L.G. INDIVIDUALLY; M.H., BY HER MOTHER AND FATHER AND NEXT FRIEND J.H., AND A.H.; AND J.H. AND A.H. INDIVIDUALLY, <br><br>     **Plaintiffs,** <br><br>  v. <br><br>THE UNITED STATES DEPARTMENT OF EDUCATION; MARGARET SPELLINGS, U.S. SECRETARY OF EDUCATION, IN HER OFFICIAL CAPACITY; THE ILLINOIS STATE BOARD OF EDUCATION; AND DR. RANDY J. DUNN, INTERIM ILLINOIS STATE SUPERINTENDENT OF EDUCATION, IN HIS OFFICIAL CAPACITY, <br><br>     **Defendants.** | No. 05 C 00655 <br><br> HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, the Boards of Education for the Ottawa Township High School and Elementary School districts in Illinois and four special education students and their parents (collectively "Plaintiffs") , are suing the United States Department of Education ("DOE"), the Illinois State

Board of Education ("ISBE"), and the respective head officials of the two agencies in their official capacities (collectively "Defendants"), pursuant to 28 U.S.C. §§ 2801 and 2802 for a declaration that portions of the No Child Left Behind Act ("NCLBA") are invalid because they violate the Individuals with Disabilities Education Act ("IDEA"). Before this Court now are 1) Defendants' ISBE and Dr. Dunn's motion for summary judgment, 2) Defendants' DOE and Margaret Spellings (the "Secretary") motion for summary judgment and 3) Plaintiffs' cross-motion for summary judgment.

**I.  RELEVANT FACTS**[1]

The NCLBA amends the Elementary and Secondary Education Act of 1965. 20 U.S.C. §6301 *et seq*. (2006). The NCLBA created adequate yearly progress ("AYP") with which it measures schools' and school districts' progress in meeting a State's academic achievement standards. NCBLA requires that a State accepting Title I funds define its own AYP to use each year to determine the progress of schools and districts. *See* 34 C.F.R. §200.13 (2006). In Illinois, AYP is based on three factors: (1) the percent of reading and math scores that meet or exceed standards, compared to the annual state targets; (2) the participation rate of students in taking the state tests; and (3) the attendance rates. 105 Illinois Compiled Statutes 5/2-3.25(b) (2006). The NCLBA requires all but a very small percentage of students with disabilities to take grade-level assessments. The NCLBA allows only a small number of students with the "most severe cognitive disabilities", to take alternate assessments and still be counted for AYP

---

[1] The following facts have been deemed to be true because this Court has determined that no reasonable finder of fact could conclude otherwise.

purposes. Therefore, most students with disabilities must take grade level assessments and meet the same proficiency standards as the general education student population.

Under IDEA, all children with disabilities are entitled to a free appropriate public education that emphasizes special education and related services designed to meet students with disabilities' unique needs and prepare them for employment and independent living. 20 U.S.C. §1400 *et seq*. (2006). An individualized education program ("IEP") for each student identified as having a disability is mandated by IDEA. §1414. The IEP is required to be aligned with the Illinois State Learning Standards, as well as reflect the needs of the individual student as they relate to her unique disability. *Id*. IDEA requires states to use IEPs to determine the appropriate way to educate and test students with disabilities, including using alternate assessments. However, those assessments must also be aligned with Illinois State Learning Standards. The NCLBA only allows students with the most serious cognitive disabilities to be tested according to the alternate assessments and included in AYP.

When a school does not achieve AYP for 4 years, the school is placed on State Academic Watch Status Year 1, 105 Illinois Compiled Statutes 5/2-3.25d, and Federal Corrective Action Status, 20 U.S.C. §6316(b)(7)(C). A school in State Academic Watch Status Year 1 is required to create a revised School Improvement Plan approved by the school board and work with a school or district improvement panel which assists with the development and implementation of the revised Improvement Plan and makes progress reports to the State Superintendent of Education. 105 Illinois Compiled Statutes 5/2-3.25(d). Additionally, a Title I school in Federal Corrective Action Status must continue to offer School Choice, Technical Assistance and SES and must engage in Corrective Action. 20 U.S.C. §6316(b)(7)(C). Corrective action must

include at least one of the following: (1) replacing the school staff who are relevant to the school's failure to make AYP; (2) instituting and fully implementing a new curriculum with appropriate professional development; (3) significantly decreasing management authority at the school level; (4) appointing outside experts; (5) extending the school day or year for the school; or (6) restructuring the internal organization of the school. 20 U.S.C. §6316(b)(7)(C).

IDEA requires the district Plaintiffs to individually assess and program for the unique needs of students with disabilities and provide services that reflect the needs of each individual student as they relate to his or her unique disability. In contrast, the NCLBA allegedly ignores the unique needs of students with disabilities by imposing a requirement that students with disabilities meet state standards based on all students. Furthermore, Plaintiffs allege that the remediation activities are applied without regard to the IEPs of students with disabilities and that the only feasible corrective action a school or district can utilize is a change in the curriculum of the students not meeting State standards. Here, those students have disabilities and changing thier curricula means changing their IEPs to meet general standards that do not account for these students' individual needs. Thus they argue that the NCBLA violates IDEA.

In 2004, Ottawa Township High School District ("Plaintiff 140") and Ottawa Township Elementary School District ("Plaintiff 141") failed to make AYP because most of their students with disabilities were tested at grade level standards rather then based on their IEP determined educational needs and ability. If the achievement scores of the students with disabilities in the school district Plaintiffs were excluded from those Plaintiff's AYP calculations, both of these Plaintiffs would have achieved AYP. These Plaintiffs, along with disabled students and their parents, brought the instant action against the DOE and ISBE claiming that as the NCLBA is

being currently administered, it violates the IDEA. Both Plaintiff 140 and 141 provide educational services to the disabled student Plaintiffs and others like them. Plaintiff 141 accepts NCLBA funds. Although Plaintiff 141 currently has no schools that have *both* accepted Title I funds and been identified for corrective action now, this Court finds that due to the Illinois Accountability System's method of grouping and subgrouping children within a district, Plaintiff 141 can possibly be subjected to corrective action at some distant point in the future. Plaintiff 140 did not receive such funds before this case was filed, but thereafter applied for those funds for the explicit purpose of securing standing. The State of Illinois accepts NCLBA funds. Under the statutes in question, when a State accepts NCBLA funds, it is then subject to certain rules and requirements. Also when schools or local educational agencies accept NCBLA funds, they too become subject to certain rules and requirements. It is not clear from the evidence presented by either party, which rules and requirements apply to a school that in its own behalf did not accept NCLBA funds, but nonetheless come under the purview of a State that has accepted NCBLA money. Thus, this Court depends on its own reading of the relevant statutory provisions.

## II.    STANDARD OF REVIEW

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(C). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it can affect the outcome

of the case under the applicable substantive law.  *Id*.  When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *See Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  To successfully oppose the motion, the non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or admissions; the non-movant cannot rest on the pleadings alone.  *Celotex*, 477 U.S. at 324.

## III.  ANALYSIS

**Standing**

Defendants assert that Plaintiffs have not established standing in this case.  Determining standing is akin to determining "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing is a question of jurisdiction, which a court must have to even hear a matter.  This is a requirement that extends to all actions, even actions for a declaratory judgment.  *J.N.S. Inc. V. State of Indiana*, 712 F.2d 303, 305-6 (7th Cir. 1983).

Under Article III of the United States Constitution, to establish standing a plaintiff must first have suffered an actual injury or be subject to an imminent injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Second, that injury must be fairly traceable to the defendant's actions.  *Id*.  Lastly, a favorable decision rendered by the court must likely redress

the plaintiff's injury. *Id.* In clarifying what an actual injury is, the United States Supreme Court has instructed that a "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Moreover, standing must exist at the time of the commencement of the suit, i.e.- the filing of the complaint. *Perry v. Village of Arlington Heights*, 186 F.2d 826, 830 (7th Cir. 1999); Fed. R. Civ. Pro. 3 (2006). A plaintiff cannot satisfy the requirements of standing as the case progresses. *Id.*

Before determining whether the Plaintiffs possess standing, it is important to understand the nature of the harms alleged in the Plaintiffs' Complaint. Plaintiffs allege that the NCLBA, as currently implemented, violates the IDEA because its remedial provisions *will* harm children by contradicting the IDEA. Further, Plaintiffs contend that the NCLBA's remedial provisions *will* harm the Plaintiff school districts if they are forced to change curricula of disabled students and lose local control of their schools. Even though Plaintiff's complain about alternative assessments and academic standards, they are not alleging any current harm to the disabled students. As discussed below, Plaintiffs lack standing to pursue their claims of future harm. Their claims of imminent harm are not supported by any genuine issues of material fact.

Defendants assert that the relevant section of the NCLBA containing corrective measures, 20 U.S.C. §6316(b)(7)(C)(iv), of which the Plaintiffs complain, does not and will not even apply to Plaintiff 141 and did not apply to Plaintiff 140 at the time this action was commenced. Defendants stress that the relevant section of the NCBLA only applies to schools that have accepted Title I funds (NCBLA funds) and have been identified for corrective action.

Plaintiff 141 currently has no schools that have *both* accepted Title I funds and been identified for corrective action and Plaintiff 140 only applied for Title I funds for the specific purpose of acquiring standing in this action after the action had began. In support of their claim that the Plaintiffs do not have standing, Defendants point to the afore-mentioned facts and several provisions of the relevant statutes, all of which were disputed by Plaintiffs. However, after reviewing the litigants' Local Rule 56.1 Statements of Facts and the deposition testimony, none of the relevant "disputed facts" are really disputed at all.

Dr. Thomas Jobst, Superintendent of Plaintiff 140, admitted while being deposed that Plaintiff 140 did not previously receive Title I funds and that the only reason that Plaintiff 140 applied for funds after the normal December 2005 window was to secure standing in this case. Dr. Christine Benson, Superintendent of Plaintiff 141, gave deposition testimony that only one school of the Plaintiff 141's district was designated in school improvement status (a statutory precursor to corrective action), but that the school did not receive Title I funds. Therefore, despite being designated in school improvement status, Plaintiff 140 was not even subject to the possibility of corrective action under the NCLBA at the time of filing suit and has no standing to pursue that claim.

Plaintiff 140 asserts in Plaintiffs' Response to Defendants' Motion for Summary Judgment that its failure to apply for Title I funds does not affect its standing in this lawsuit because the State of Illinois' decision to accept Title I funds has forced the State to enact laws that require all school districts to meet certain proficiency levels or face sanctions. Not so. The text of the NCLBA does not support Plaintiff 140's argument. It is true that §6311 requires States receiving NCLBA funds to develop plans applicable to all schools and all children within

the State and to utilize accountability systems that apply to all local educational agencies and public schools. But, §6311(b)(2) clearly explains that local educational agencies and public schools not participating in this part (i.e.- which did not accept Title I funds) are not subject to §6316, which contains the corrective measures of which Plaintiffs complain. Thus Plaintiff 140 could not have been subjected to corrective action because it has not received Title I funds. This remains true even though §6311 forces Illinois to include all public schools and local educational agencies in its accountability system and standards. Plaintiff 140 has no standing to bring any claim in this action against Defendants and is hereby dismissed.

Plaintiff 141 admitted in its deposition testimony that it had no schools in corrective action but it disputed whether the district as a whole would be subject to corrective action. Since it is disputed whether Plaintiff 141 can one day be subjected to corrective action, this Court finds, for purposes of summary judgment, that Plaintiff 141 has shown that it can possibly face corrective action in the indiscernible future.[2] Corrective action is not the same for districts as it is for schools. The ISBE has identified the following corrective actions are applicable to districts: defer programmatic funds or reduce administrative funds; implement a new curriculum and professional development for all relevant staff; replace district personnel who are relevant to its inability to make adequate yearly progress; remove individual schools from the district's jurisdiction and arrange for their public governance and supervision; appoint a receiver or trustee to administer district affairs, in place of the superintendent and school board; abolish or restructure the district; and/or authorize students to transfer to a higher-performing public school

---

[2] In any event, Plaintiff 141 admitted that the earliest the district could be subjected to corrective measures would be two years from the date of that testimony, sometime in 2008.

operated by another district. SCHOOL RESTRUCTURING, DISTRICT CORRECTIVE ACTION, AND SYSTEMATICALLY NONCOMPLIANT DISTRICTS, *available at* http://www.isbe.state.il.us/board/pdf/restructuring_corrective_action_non_compliant.pdf.

Here, Plaintiff 141 is complaining of 1) changing curricula and 2) losing local control of the district. But for either of these two events to occur, several intervening events that are contingent on other factors must occur and several years must pass.

First, to the extent that Plaintiff 141 would be forced into a position of harming the Plaintiff students by disregarding their IEPs, it is the State of Illinois, by executing state law and implementing its corresponding plan that would be the actual and proximate causes of the harm here, not the conduct of the DOE. The State of Illinois chose to receive federal funds. The State of Illinois defines AYP. The State of Illinois sets the applicable academic standards. Thus, none of the remaining Plaintiffs have standing to sue the DOE because the harm they allege here is not fairly traceable to the DOE's actions. Indeed, the remedy that Plaintiffs seek in the third paragraph of their prayer for relief is a declaration that Illinois' implementation of the NCLBA is invalid because it violates the IDEA. In sum, Plaintiffs have no standing to bring this cause of action against the DOE or Margaret Spellings, in her official capacity. These defendants are dismissed from this action.

Second, Plaintiffs lack standing to complain about the prospect of being subjected to corrective action and the dreaded final sanction of losing local control of the school district because those occurrences are far too speculative and subject to too many contingencies to be deemed imminent. Plaintiffs have not provided one piece of factual evidence to support their assertions that they are subject to imminent corrective action or sanctions. Before a school or

district can even be identified for corrective action, it must have failed to produce adequate AYP for four consecutive years. Plaintiff 141 produced no evidence that with certainty in any given year, it, or any school within it, will fail to make AYP requirements. Next, a school or district can reach safe harbor provisions for groups and subgroups of its students that will enable the school to avoid failing AYP for a given year. Plaintiff 141 admitted it made use of the safe harbor provision for its special education students in 2005. Lastly, Plaintiffs admit that the DOE has implemented regulations making it slightly easier to achieve the safe harbor.

So despite having to fail to satisfy AYP for four consecutive years, and the real possibilities of actually meeting AYP requirements or qualifying for safe harbor, Plaintiffs nonetheless argue that Illinois' implementation of the NCLBA violates the IDEA because they are required to make systematic changes that will harm the disabled children of the Plaintiffs' school districts. Plaintiffs argue that none of the corrective measures are feasible except for instituting and implementing a new curriculum. In reality, Plaintiffs are simply unwilling to try to find creative solutions should the need arise.

Plaintiffs allege that they cannot replace school staff responsible for the school's failure to achieve AYP because significant numbers of special education teachers are tenured and a tenured teacher may be dismissed for specific reasons. (Complaint, ¶¶50-52.) They also allege collective bargaining agreements prohibit extending the school day and year unilaterally. (Complaint, ¶53.) They also allege they have already hired and utilize outside experts. (Complaint, ¶53-54.) Nor can they decrease management authority or any of the other actions applicable to a school or district. (Plaintiff's Memorandum in Support of Motion for Summary Judgement, p. 12.) Indeed, even the ISBE recognizes a district's choices may be limited. *See*

*Guidance to Districts with Schools in Corrective Action*, available at http://www.isbe.state.il.us/sos/pdf/guidance_CA.pdf.   But simply because Plaintiff 141's choices may be difficult and limited does not mean that the choices are illusory.

The evidence demonstrates that not one provision of the NCLBA ultimately requires Plaintiff school districts to change the IEPs of its disabled students.  The text of both the NCLBA and the IDEA actually suggest the exact opposite conclusion.  Even assuming that instituting and implementing a new curriculum really means changing IEPs, Plaintiffs present no facts that explain how IEP modifications –necessarily designed to improve student performance–would concretely harm disabled students.  Defendants have noted that in order to achieve AYP, the academic performance of disabled students must improve.  Presumably, if the school districts are attempting to comply with the NCLBA, they will aim to improve student academic performance. But as evidenced from its deposition testimony, Plaintiff 141 is not so much concerned with improving disabled student's academic performance if it concludes the standards these children face are too high given their IEPs.  Even though 20 U.S.C. § 1414(d)(1)(A)(i)(VI)(aa) requires that "[a]ll IEPs must contain 'a statement of any individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of' students under the assessments required by the NCLB and IDEA..."

Changing the curriculum is but one of several choices that Plaintiff 141 could elect if it is ever subjected to corrective action and Plaintiff 141 does not offer any genuine issues of fact to demonstrate that it cannot implement the other choices.  Indeed, every reason it offers (to show that changing curriculum is the only feasible option) is either logically faulty or not a result of the Defendants' conduct.  The statute calls for a reduction in "staff" responsible for the "school's

failure to achieve AYP" not "tenured teachers." Plaintiffs allege, and the statute supports that the factors that determine AYP in Illinois are student performance on standardized tests, attendance rates and assessment participation. (Complaint, ¶27.) Obviously tenured teachers are not the only members of "school staff" responsible for those factors. Similarly, just because the collective bargaining agreements cannot be changed unilaterally does not mean they cannot be changed. In sum, Plaintiffs have not demonstrated that the other options are unavailable, they have just demonstrated that they are not as easily to achieve as changing the students' curricula.

Again, nothing in the NCLBA keeps Plaintiff districts from implementing changes that take into account the IEPs of students with disabilities–and indeed, the text of both the NCLBA and the IDEA suggest the exact opposite conclusion. Moreover, Plaintiffs have no basis in fact to insist that they must make systemic changes that disregard individual IEPs, when there are certainly systemic changes they can make that do not require the modification of individual IEPs, such as appointing an outside expert, decreasing managerial authority, or replacing ineffective staff. At best, Plaintiffs' evidence indicates that they will choose to implement systemic reform that may violate the IDEA. But redressable injuries do not arise from voluntary choices.

Plaintiffs seek to establish standing by alleging that, the NCLBA as implemented, is violating the IDEA and will harm the disabled student Plaintiffs by forcing them to meet the same academic standards applicable to non-disabled children and forcing them to take assessments without regard for their disabilities. But the evidence establishes that 1) the statutes provide for alternate assessments and alternative academic achievement standards for disabled children and 2) no one has forced the disabled student Plaintiffs to do anything contrary to

IDEA's guarantee of a free appropriate education. *See Honing v. Doe*, 484 U.S. 305, 310 (2006) (recognizing IDEA confers upon disabled students the right to a free appropriate public education.)

Plaintiffs allege that "20 U.S.C. §1400(d)(c)(5)(A)" requires special education children be held to the challenging academic standards of all students only to the extent possible with their disability. That provision does not exist. Defendants point to 20 U.S.C. §1400(c)(5)(A) as the relevant provision. That provision relates to Congressional findings and does not require anything. Plaintiffs allege further that the NCLBA, as codified at 20 U.S.C. §1400(d)(c)(5)(A) and implemented in Illinois, holds all students to the same academic standards regardless of disability in violation of the IDEA. (Complaint, 91.) They also argue that the NCLBA, as implemented in Illinois, violates the IDEA because it does not allow students whose IEPs call for alternate assessments to be assessed accordingly. Plaintiffs are simply wrong.

IDEA requires all disabled children included in statewide assessment programs, including NCLBA assessments, to take alternate assessments, if required by their respective IEPs. 20 U.S.C. §1412(a)(16)(A). Alternate assessments are allowed for "children with disabilities... who cannot participate in regular assessments under subparagraph (A) with accommodations *as indicated in their respective individualized education programs*." 20 U.S.C. §1412(a)(16)(C)(i) (emphasis added). These alternate assessments must be *aligned with*, not equal, the State's challenging academic content standards and challenging student academic achievement standards; and also measure the achievement of children with disabilities against *alternate academic achievement standards*, if the State has adopted such alternate academic achievement standards permitted under the regulations promulgated to carry out §6311(b)(1). 20

U.S.C. §1412(a)(16)(C)(ii). Those same academic assessments must also provide for "the reasonable adaptations and accommodations for students with disabilities (as defined under section 1401(3) of this title) necessary to measure the academic achievement of such students *relative to* State academic content and State student academic achievement standards." 20 U.S.C. §6311(b)(3)(C). Finally, §1401(3) defines a "child with a disability" generally as "a child (I) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other *health impairments*, *or specific learning disabilities*; and (ii) who, by reason thereof, *needs special education* and *related services*." Plaintiffs even admit that students with disabilities in Illinois may take the regular state assessment without accommodations, with accommodations or instead, they may take alternate assessments. (Complaint, ¶68).

Plaintiffs assert 34 C.F.R. §200.1(d) (NCLBA regulation) only allows alternate achievement standards for those "students with the most serious cognitive disabilities" as opposed to mere "students with disabilities." But as stated before, there has been no showing that holding disabled children to the same achievement standards as non-disabled children is in itself harmful or violative of IDEA's guarantee of a free appropriate education. especially when IDEA requires all disabled children included in statewide assessment programs, including NCLBA assessments, to take alternate assessments, if required by their respective IEPs, and requires those alternate assessments to be "aligned with the State's challenging academic content standards and challenging student academic achievement standards;" 20 U.S.C.

§1412(a)(16)(A).  Furthermore, IDEA requires disabled students to be educated alongside non-disabled students and to the extent possible.  §1412(a)(5)(B).

In conclusion, Plaintiff 140 did not have standing to bring this suit.  None of the Plaintiffs had standing to sue the federal defendants as the harm alleged by the Plaintiff cannot be attributed to them.  Finally, Plaintiffs have no standing to pursue the claim that the NCBLA requires changing IEPs in violation of the IDEA either because the alleged injuries were purely speculative, dependent on the occurrence of too may intervening events, and too far off into the future to be ripe for adjudication.

**Eleventh Amendment issue**

As Plaintiffs lack standing to seek declaratory relief, this Court declines reach the issues presented by the ISBE of whether the Eleventh Amendment bars suit.  *Sierakowski v. Ryan*, 223 F.3d 440, 445 (7th Cir. 2000).

**IV. CONCLUSION**

For the above-stated reasons, Plaintiffs' Motion for Summary Judgment is **DISMISSED**.  Defendants' Motions for Summary Judgment are **GRANTED**.  This civil case is terminated as the Plaintiffs lack standing to pursue their claims before an Article III court.

Enter:
/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **March 31, 2007**